LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
124 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ALBERTO MONTALVO,<br>DANIEL HURTADO,<br>FREDY RAMIREZ,<br>JOSE RICARDO LOPEZ,<br>MARIO VARGAS,<br>MAURICIO SANTOS, and<br>VICTOR HUGO SERRANO,<br>*on behalf of themselves,*<br>*FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiffs, | **CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| FIG & OLIVE FOUNDERS LLC,<br>FIG & OLIVE USA INC.,<br>FIG & OLIVE HOLDING LLC,<br>FIG & OLIVE FIFTH AVENUE LLC<br>    d/b/a FIG & OLIVE FIFTH AVENUE,<br>FIG & OLIVE THIRTEEN STREET LLC<br>    d/b/a FIG & OLIVE MEATPACKING,<br>FIG & OLIVE INC.<br>    d/b/a FIG & OLIVE UPTOWN,<br>LAURENT HALASZ,<br>JEAN PIERRE HALASZ,<br>SEBASTIAN GAULT,<br>and CHRISTOPHER MEAKER, | |
| Defendants. | |

---

Plaintiffs ALBERTO MONTALVO, DANIEL HURTADO, FREDY RAMIREZ, JOSE RICARDO LOPEZ, MARIO VARGAS, MAURICIO SANTOS, and VICTOR HUGO SERRANO (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this class and collective action Complaint against Defendants FIG & OLIVE FOUNDERS LLC, FIG & OLIVE USA INC., FIG & OLIVE HOLDING LLC, FIG & OLIVE FIFTH AVENUE LLC d/b/a FIG & OLIVE FIFTH AVENUE, FIG & OLIVE THIRTEEN STREET LLC d/b/a FIG & OLIVE MEATPACKING, FIG & OLIVE INC. d/b/a FIG & OLIVE UPTOWN (collectively, the "Corporate Defendants"), LAURENT HALASZ, JEAN PIERRE HALASZ, SEBASTIAN GAULT, and CHRISTOPHER MEAKER (collectively, the "Individual Defendants"; and together with the Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to time-shaving; (2) unpaid wages due to invalid tip credit, (3) illegal retention of gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to time-shaving; (2) unpaid wages due to invalid tip credit, (3) illegal retention of gratuities, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff ALBERTO MONTALVO is a resident of New York County, New York.

6.     Plaintiff DANIEL HURTADO is a resident of Bronx County, New York.

7.     Plaintiff FREDY RAMIREZ is a resident of Queens County, New York.

8.     Plaintiff JOSE RICARDO LOPEZ is a resident of Bronx County, New York.

9.     Plaintiff MARIO VARGAS is a resident of Queens County, New York.

10.    Plaintiff MAURICIO SANTOS is a resident of Queens County, New York.

11.    Plaintiff VICTOR HUGO SERRANO is a resident of Bronx County, New York.

12.    Defendants operate a chain of restaurants as a single integrated enterprise under the trade name "Fig & Olive" stores throughout the United States. Defendants own and operate Fig & Olive restaurants at the following locations in New York City:

   a.  10 East 52nd Street, New York, New York 10022 (the "Fifth Avenue" location);

   b.  420 West 13th Street, New York, New York 10014 (the "Meatpacking" location); and

   c.  808 Lexington Avenue, New York, New York 10065 (the "Uptown" location) (collectively, the "Restaurants").

13.    The Restaurants are operated by Defendants as a single integrated enterprise. The Restaurants are commonly owned by Corporate Defendants FIG & OLIVE FOUNDERS LLC,

FIG & OLIVE USA INC., FIG & OLIVE HOLDING LLC., and the Individual Defendants. The Restaurants are advertised on the following website: https://www.figandolive.com/. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

     a.  All of the Restaurants share similar menus, with many identical menu items;

     b.  Supplies are interchangeable among the Restaurant locations;

     c.  Employees are interchangeable among the Restaurant locations; and

     d.  The Restaurants share payroll methods and have a single, centralized system of labor relations for employees, including employee scheduling. For example, and attached hereto as **Exhibit A**, is true and correct copy of Defendants' "Fig & Olive Server Master Schedule" depicting Plaintiff FREDY RAMIREZ' work schedule for the week of September 24, 2018, where he was scheduled to cover six (6) consecutive work shifts, from Monday to Friday, at Defendants' Uptown Restaurant location, and which also provides that Plaintiff FREDY RAMIREZ would return to the Fifth Avenue location for work shifts that Saturday and Sunday.

14. Corporate Defendant FIG & OLIVE FOUNDERS LLC is a foreign limited liability company organized under the laws of the State of Delaware, with an address for service of process located at 133 West 19th Street, Suite 300, New York, New York 10011.

15. Corporate Defendant FIG & OLIVE USA INC. is a foreign limited liability company organized under the laws of the State of Delaware, with an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

16.     Corporate Defendant FIG & OLIVE HOLDING LLC is a foreign limited liability company organized under the laws of the State of Delaware, with an address for service of process located at 254 West 31st Street, 7th Floor, New York, New York 10001.

17.     Corporate Defendant FIG & OLIVE FIFTH AVENUE LLC d/b/a FIG & OLIVE FIFTH AVENUE is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 10 East 52nd Street, New York, New York 10022 and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

18.     Corporate Defendant FIG & OLIVE THIRTEEN STREET LLC d/b/a FIG & OLIVE MEATPACKING is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 420 West 13th Street, New York, New York 10014 and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

19.     Corporate Defendant FIG & OLIVE INC. d/b/a FIG & OLIVE UPTOWN is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 808 Lexington Avenue, New York, New York 10065 and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

20.     Individual Defendant LAURENT HALASZ is an owner and principal of the Corporate Defendants. Defendant LAURENT HALASZ exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant LAURENT HALASZ frequently visited each of the Restaurant locations. Defendant LAURENT HALASZ exercises the power to (and also delegates to managers and supervisors the power to)

5

fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant LAURENT HALASZ directly regarding any of the terms of their employment, and Defendant LAURENT HALASZ had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

21.   Individual Defendant JEAN PIERRE HALASZ is an owner and principal of the Corporate Defendants. Defendant JEAN PIERRE HALASZ exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant JEAN PIERRE HALASZ frequently visited each of the Restaurant locations. Defendant JEAN PIERRE HALASZ exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant JEAN PIERRE HALASZ directly regarding any of the terms of their employment, and Defendant JEAN PIERRE HALASZ had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

22.   Individual Defendant SEBASTIAN GAULT is an owner and principal of the Corporate Defendants. Defendant SEBASTIAN GAULT exercises operational control as it

6

relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant SEBASTIAN GAULT frequently visited each of the Restaurant locations. Defendant SEBASTIAN GAULT exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant SEBASTIAN GAULT directly regarding any of the terms of their employment, and Defendant SEBASTIAN GAULT had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

23.    Individual Defendant CHRISTOPHER MEAKER is an owner and principal of the Corporate Defendants. Defendant CHRISTOPHER MEAKER exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant CHRISTOPHER MEAKER frequently visited each of the Restaurant locations. Defendant CHRISTOPHER MEAKER exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant CHRISTOPHER MEAKER directly regarding any of the terms of their employment, and Defendant CHRISTOPHER MEAKER had the authority to effect any changes to the quality and terms of employees' employment, including changing their

schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

24.   At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL and regulations thereunder.

25.   At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

26.   Although Plaintiffs did not work at all of the Restaurants, the Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiffs seek to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt tipped employees, including but not limited to, food runners, servers, bussers, and bartenders, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

28.   At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and are subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs their proper wages due to Defendants'

time-shaving practices, improperly deducted tip credit, and illegal retention of gratuities. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

29.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt tipped employees, including but not limited to, food runners, servers, bussers, and bartenders, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class," or "Class Members").

31.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

9

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

33.    Plaintiffs' claims are typical of those claims that may be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, including (i) mandating unpaid off-the-clock work, (ii) failing to pay proper tip credit, (iii) illegally retaining gratuities, (iv) failing to provide wage statements in compliance with the New York Labor Law, and (v) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

34.    With regard to Plaintiffs and Class members, Defendants failed to pay them proper wages because Defendants were not entitled to claim any tip credit as Defendants failed to meet the statutory requirements under the New York Labor Law. Plaintiffs and Class Members suffered from Defendants' failure to pay proper wages due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) failed to inform Plaintiffs and Class Members that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them; (iii) failed to inform Plaintiffs and Class Members that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement; (iv) failed to inform Plaintiffs and Class Members

that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement; (iv) claimed a tip credit for all hours worked by Plaintiffs and Class Members despite having caused Plaintiffs and Class Members to engage in non-tipped duties for hours exceeding 20% of the total hours worked each week; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof. Defendants also kept all cash tips and illegally retained gratuities or service charges from private events or banquets.

35.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

36.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the

claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.     Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

    c.     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

f.  Whether Defendants required Plaintiff and the Class members to perform unpaid off-the-clock work;

g.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j.  Whether Defendants subjected tipped employees to an invalid tip pooling policy;

k.  Whether Defendants retained or failed to remit gratuities to Plaintiffs and Class members for events;

l.  Whether Defendants retained or failed to remit cash gratuities to Plaintiffs and Class members;

m.  Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked.

n.  Whether Defendants provided proper wage statements informing tipped employees of the amount of tip credit taken for each payment period and information required to be provided on wage statements under the New York Labor Law; and

o.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

**STATEMENT OF FACTS**

39.   Plaintiff ALBERTO MONTALVO ("Plaintiff MONTALVO"):

(a) In or around March 2008, Plaintiff MONTALVO was hired by Defendants to work as a food runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff MONTALVO continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff MONTALVO's employment with Defendants, Plaintiff MONTALVO was regularly scheduled to work from 11:45am to 9:00pm, for two (2) days per week, and from 5:00pm to 10:30pm, for three (3) days per week, for a total of approximately thirty-five (35) hours per week.

(c) Plaintiff MONTALVO was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From March 2008 to 2009, Plaintiff MONTALVO was compensated at an hourly rate of $4.60 per hour, for all hours up to forty (40) hours per week. From 2010 to 2013, Plaintiff MONTALVO was compensated at an hourly rate of $4.75 per hour, for all hours up to forty (40) hours per week. From 2014 to 2015, Plaintiff MONTALVO was compensated at an hourly rate of $5.00 per hour, for all hours up to forty (40) hours per week. From 2016 to 2017, Plaintiff MONTALVO was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff MONTALVO was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff MONTALVO was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

14

40.    Plaintiff DANIEL HURTADO ("Plaintiff HURTADO"):

(a) In or around August 2013, Plaintiff HURTADO was hired by Defendants to work as a food runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff HURTADO continues to work for Defendants at the Fifth Avenue Restaurant.

(b) From the beginning of employment with Defendants to January 2017, Plaintiff HURTADO was regularly scheduled to work from 11:45am to 9:00pm, for three (3) days per week, and 5:00pm to 10:30pm, for two (2) days per week, for a total of approximately thirty-eight (38) hours and forty-five (45) minutes per week, or thirty-eight-and-three-fourths (38.75) hours per week. From January 2017 to the present, Plaintiff HURTADO was regularly scheduled to work from 5:00pm to 10:30pm, for one (1) day per week, for a total of approximately five (5) hours and thirty (30) minutes, or five-and-one-half (5.5) hours per week.

(c) Plaintiff HURTADO was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From August 2013 to December 2013, Plaintiff HURTADO was compensated at an hourly rate of $4.75 per hour, for all hours up to forty (40) hours per week. From 2014 to 2015, Plaintiff HURTADO was compensated at an hourly rate of $5.00 per hour, for all hours up to forty (40) hours per week. From 2016 to 2017, Plaintiff HURTADO was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff HURTADO was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff HURTADO was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

41.    Plaintiff FREDY RAMIREZ ("Plaintiff RAMIREZ"):

(a) In or around November 2017, Plaintiff RAMIREZ was hired by Defendants to work as a food runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff RAMIREZ continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff RAMIREZ' employment with Defendants, Plaintiff RAMIREZ was regularly scheduled to work the following hours each week: Monday, from 6:00am to 3:00pm; Thursday, from 11:00am to 4:00pm; Friday, from 11:45am to 9:00pm; Saturday, from 5:00pm to 10:30 pm; and Sunday, from 11:30am to 9:00pm, for a total of approximately thirty-eight-and-one-fourth (38.25) hours per week. Furthermore, as **Exhibit A** illustrates, Plaintiff RAMIREZ worked six (6) consecutive server shifts during the week of September 24, 2018 at Defendants' Uptown Restaurant location.

(c) Plaintiff RAMIREZ was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From November 2017 to December 2017, Plaintiff RAMIREZ was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff RAMIREZ was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff RAMIREZ was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

42.    Plaintiff JOSE RICARDO LOPEZ ("Plaintiff LOPEZ"):

(a) In or around January 2016, Plaintiff LOPEZ was hired by Defendants to work as a food runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff LOPEZ continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff LOPEZ's employment with Defendants, Plaintiff LOPEZ was regularly scheduled to work from 10:00am to 3:00pm for four (4) days per week, for a total of approximately twenty (20) hours per week.

(c) Plaintiff LOPEZ was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From January 2016 to December 2017, Plaintiff LOPEZ was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff LOPEZ was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff LOPEZ was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

43.   Plaintiff MARIO VARGAS ("Plaintiff VARGAS"):

(a) In or around September 2017, Plaintiff VARGAS was hired by Defendants to work as a food runner and busboy at Defendants' Fifth Avenue Fig & Olive location. Plaintiff VARGAS continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff VARGAS' employment with Defendants, Plaintiff VARGAS was usually scheduled to work from 11:45am to 9:00pm for two (2) days per week, and from 5:00pm to 11:30pm, for three (3) days per week, for a total of approximately thirty-eight (38) hours per week.

(c) Plaintiff VARGAS was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From September 2017 to December 2017, Plaintiff VARGAS was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff VARGAS was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff VARGAS

was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

44.    Plaintiff MAURICIO SANTOS ("Plaintiff SANTOS"):

(a) In or around June 2014, Plaintiff SANTOS was hired by Defendants to work as a food runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff SANTOS continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff SANTOS' employment with Defendants, Plaintiff SANTOS was regularly scheduled to work from 10:00am to 3:00pm, for five (5) days per week, for a total of approximately twenty-five (25) hours per week.

(c) Plaintiff SANTOS was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From June 2014 to December 2015, Plaintiff SANTOS was compensated at an hourly rate of $5.00 per hour, for all hours up to forty (40) hours per week. From 2016 to 2017, Plaintiff SANTOS was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff SANTOS was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff SANTOS was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

45.    Plaintiff VICTOR HUGO SERRANO ("Plaintiff SERRANO"):

(a) In or around April 2014, Plaintiff SERRANO was hired by Defendants to work as afood runner at Defendants' Fifth Avenue Fig & Olive location. Plaintiff SERRANO continues to work for Defendants at the Fifth Avenue Restaurant.

(b) Throughout Plaintiff SERRANO's employment with Defendants, Plaintiff SERRANO was regularly scheduled to work from 5:00pm to 10:30pm for two (2) days per week, from

11:45am to 9:30pm for two (2) days per week, and from 5:00pm to 11:00pm for one (1) day per week, for a total of approximately thirty-six (36) hours and thirty (30) minutes per week, or thirty-six-and-one-half (36.5) hours per week.

(c) Plaintiff SERRANO was compensated at the tip credit minimum wage throughout the entirety of his employment with Defendants. From April 2014 to December 2015, Plaintiff SERRANO was compensated at an hourly rate of $5.00 per hour, for all hours up to forty (40) hours per week. From 2016 to 2017, Plaintiff SERRANO was compensated at an hourly rate of $7.50 per hour, for all hours up to forty (40) hours per week. In 2018, Plaintiff SERRANO was compensated at an hourly rate of $8.65 per hour, for all hours up to forty (40) hours per week. From 2019 to the present, Plaintiff SERRANO was compensated at an hourly rate of $10.00 per hour, for all hours up to forty (40) hours per week.

46.   At all relevant times, Defendants made automatic meal deductions of either thirty (30) minutes or sixty (60) minutes from each of Plaintiffs' scheduled single shifts and double shifts, respectively. However, due to how busy each of their scheduled shifts were, Plaintiffs were unable to actually take a meal break approximately three (3) days each workweek. Therefore, Plaintiffs routinely performed off-the-clock work during Defendants' automatically imposed meal break period. Plaintiffs were never paid for this off-the-clock work. Similarly, FLSA Collective Plaintiffs and Class members performed off-the-clock work due to Defendants' automatically imposed meal breaks, and have not been compensated for this off-the-clock work.

47.   At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and the Class were paid below the minimum wage at an invalid tip credit minimum wage. Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip

credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA; (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty (20) percent of the total hours worked each workweek in violation of the FLSA and NYLL; (vi) failed to accurately track daily tips earned or maintain records thereof; (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL; (viii) failed to provide a proper wage statement with every payment of wages informing Plaintiffs and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL; and (ix) illegally retained gratuities. Defendants kept all cash tips and only split credit card tips among tipped employees.

48. Plaintiffs, FLSA Collective Plaintiffs, and the Class were required to dedicate more than 20% of their working time performing non-tipped related activities, such as cutting bread, refilling condiment containers, toasting almonds, preparing garnish for all plates, performing expeditor duties, and performing porter duties. Any time the porter is out, tipped employees would have to do all of his work. Furthermore, for the approximately fifteen (15) private banquets or events that would take place each month at Defendants' Restaurants, Plaintiffs, FLSA Collective Plaintiffs, and the Class were required to set up all furniture, tables, and chairs. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members were compensated at the tipped credit minimum wage rate, despite the fact that they engaged in non-tipped activities for hours exceeding 20% of the total hours worked each week.

49.    At all relevant times to this action, while Defendants compensate Plaintiffs, FLSA Collective Plaintiffs, and Class members at a rate of twenty-four (24) or twenty-five (25) dollars per hour for performing work duties in connection with private banquets or events, Defendants unlawfully retain *all* gratuities or service charges generated from these private banquets and events. Furthermore, although Plaintiffs, FLSA Collective Plaintiffs, and Class members never received any such gratuities or service charges from private banquets or events, an event coordinator would receive approximately two (2) to three (3) percent of the gratuity or service charges generated from each private event. At all relevant times, Defendants never remitted any such gratuities or service charges to Plaintiffs, FLSA Collective Plaintiffs, and Class members. Furthermore, Defendants compensated Plaintiffs, FLSA Collective Plaintiffs, and Class members at rates above the minimum wage rate during hours that they worked during the event in order to keep the banquet event gratuities. However, such gratuities must be remitted to Plaintiffs, FLSA Collective Plaintiffs, and Class members regardless of whether Defendants claimed a tip credit, as Defendants are not permitted to accept any such gratuities.

50.    Defendants further illegally retained gratuities by permitting managers to retain cash gratuities. At all times, Defendants maintained a policy of not recording cash tips, and therefore, such tips were kept by managers and not redistributed to Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, Defendants failed to maintain tips sheets and failed to inform Plaintiffs, FLSA Collective Plaintiffs and Class members of the tip pool and their respective tip pool contribution.

51.    Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

52.     Plaintiffs and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period.

53.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

54.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

55.     Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

56.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

57.     Plaintiffs reallege and reaver Paragraphs 1 through 56 of this class and collective action Complaint as fully set forth herein.

58.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs, and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

59.    At all relevant times, Defendants employed Plaintiffs, and FLSA Collective Plaintiffs within the meaning of the FLSA.

60.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

61.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

62.    At all relevant times, Defendants had a policy and practice of failing to pay to Plaintiffs and FLSA Collective Plaintiffs for all hours worked due to Defendants' time-shaving practices.

63.    At all relevant times, Defendants had a policy and practice of illegally retaining gratuities.

64.    Records, if any exist, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

66. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

67. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, illegally retained gratuities, plus an equal amount as liquidated damages.

68. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u><br><u>ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS</u>

69. Plaintiffs reallege and reaver Paragraphs 1 through 68 of this class and collective action Complaint as fully set forth herein.

70. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

71. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the statutory minimum wage and proper overtime premium for their lawful hours worked. Defendants were not entitled to claim any tip credits.

72. At all relevant times, Defendants had a policy and practice of failing to pay to Plaintiffs and Class members for all hours worked due to Defendants' time-shaving practices.

73. At all relevant times, Defendants had a policy and practice of illegally retaining gratuities, service charges, and cash tips.

74.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance not included in wage statements to tipped employees for each payment period in 2018.

75.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

76.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, illegally retained gratuities, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to Defendants' time-shaving practices;

d.  An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to an invalid tip credit;

e.  An award of damages representing Defendants' illegal retention of gratuities;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

h.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiffs as Representatives of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: February 24, 2020

Respectfully submitted,

By:  */s/ C.K. Lee*
C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
124 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188

26

Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*